UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| WYNN LAS VEGAS, LLC,<br><br>            Plaintiff,<br><br>      vs.<br><br>CIGAR ROW, LLC,<br><br>            Defendant. | 2:15-cv-01079-RJC-CWH<br><br>**ORDER** |

This case arises from an alleged breach of contract between a vendor and vendee. Pending before the Court is a Motion for Summary Judgment (ECF No. 22) filed by Plaintiff Wynn Las Vegas, LLC ("Wynn"). For the reasons given herein, the Motion is granted in part and denied in part.

I.      **FACTS AND PROCEDURAL HISTORY**

Cigar Row, LLC ("Cigar Row") is a South Carolina company that wholesales cigars and cigar-related products to businesses that then sell those products to consumers. In late 2011, Cigar Row solicited Wynn to wholesale cigars and related products for Wynn's properties in Las Vegas. (Brown Dep. 20:2–23, ECF No. 22 at 29.) Wynn requires prospective vendors to register online to provide certain information and guarantees. (*Id.* at 28:8–19, ECF No. 22 at 33; Registration Portal, ECF No. 22 at 105.) Vendors that register online agree to follow the terms and instructions of the Wynn Las Vegas Retail Vendor Compliance Guide ("Compliance

Guide"). (Registration Portal, ECF No. 22 at 105.) Cigar Row registered online with Wynn, indicating it was licensed to operate only in South Carolina. (Registration, ECF No. 24 at 16.) Cigar Row sold cigars to Wynn from 2012 to 2014.

The Compliance Guide contains several provisions that require vendors to comply with applicable federal, state, and local laws and regulations. For example, it requires vendors to obtain licenses necessary for conducting business in the State of Nevada. (Compliance Guide 8, 22–23, ECF No. 22 at 110, 124–25.) It also requires vendors to inform Wynn if at any time they are not in compliance with the terms of the Compliance Guide. (*Id.* at 23.) Nevada law prohibits wholesale dealers of "other tobacco products" ("OTP") from engaging in business in Nevada without obtaining a license as a wholesale dealer, *see* NRS 370.445, and it requires wholesale dealers to collect and pay a thirty percent tax on OTP purchased in the state, *see* NRS 370.450.

Wynn alleges that Cigar Row breached its contract with Wynn by failing to obtain a license to operate in Nevada and by failing to pay $136,008.99 in OTP taxes, which Wynn was required to pay to the state. (Lawrence Decl. ¶ 4, ECF No. 22 at 184; Check, ECF No. 22 at 186.) Wynn also alleges that Cigar Row made various misrepresentations about the taxes and failed to inform Wynn that it was not licensed in Nevada and was not paying OTP taxes. Wynn brings the following claims against Cigar Row: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) intentional misrepresentation; (4) negligent misrepresentation; and (5) unjust enrichment (alternative to breach of contract). Wynn moves the Court to grant summary judgment in its favor as to all claims.

## II. LEGAL STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court uses a burden-shifting scheme. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.

If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*,

880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50. Notably, facts are only viewed in the light most favorable to the non-moving party where there is a genuine dispute about those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). That is, even where the underlying claim contains a reasonableness test, where a party's evidence is so clearly contradicted by the record as a whole that no reasonable jury could believe it, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

### III. ANALYSIS

#### A. Breach of Contract

##### 1. Legal Standards

A plaintiff must prove four elements to succeed on a claim of breach of contract: "(1) formation of a valid contract; (2) performance or excuse of performance by the plaintiff; (3) material breach by the defendant; and (4) damages." *Laguerre v. Nevada Sys. of Higher Educ.*, 837 F. Supp. 2d 1176, 1180 (D. Nev. 2011). "Basic contract principles require, for an enforceable contract, an offer and acceptance, meeting of the minds, and consideration." *May v. Anderson*, 119 P.3d 1254, 1256 (Nev. 2005). "[T]o enforce a contract at law, the offer must be sufficiently definite or must call for such definite terms in the acceptance, that the performance required is reasonably certain." *Laguerre*, 837 F. Supp. 2d at 1180 (quoting *Spellman v. Dixon*,

63 Cal. Rptr. 668, 670 (1967)). "In order to be sufficiently definite, the parties must have agreed to all material terms of a contract." *Id.* (*citing Chung v. Atwell*, 745 P.2d 370, 371 (Nev. 1987)).

### 2. Analysis

Wynn has proven that Cigar Row breached a contract between them. In late 2011, Cigar Row solicited Wynn to wholesale cigars and related products for Wynn's properties in Las Vegas. (Brown Dep. 20:2–23, ECF No. 22 at 29.) Wynn requires prospective vendors to register online to provide certain information. (*Id.* at 28:8–19, ECF No. 22 at 33; Registration Portal, ECF No. 22 at 105.) Vendors that register online agree to follow the terms and instructions of the Wynn Las Vegas Retail Vendor Compliance Guide ("Compliance Guide"). (*Id.*). Cigar Row registered online with Wynn and by doing so acknowledged receipt of the Compliance Guide and agreed to follow all of its terms and instructions. (Registration, ECF No. 24 at 16; Registration Portal, ECF No. 22 at 105; Brown Dep. 24:19–26:23, ECF No. 22 at 30–32.) At this point, Cigar Row entered a valid contract with Wynn.

When Wynn sends a purchase order to a vendor, the order states that "ALL PURCHASE ORDERS . . . MUST CONFORM TO THE VENDOR COMPLIANCE GUIDE." (Purchase Order, ECF No. 22 at 132.) Brown has read at least one purchase order from beginning to end. (Brown Dep. 56:19–21, ECF No. 22 at 41.) Also, with each purchase order sent to Cigar Row, Wynn sent the most recent version of the Compliance Guide, which Brown read. (Brown Dep. 46:23–47:1, 59:23–60:7, ECF No. 22 at 38–39, 43–44; Catanzaro Decl. ¶ 5, ECF No. 22 at 160.) Wynn performed its part of the contract by maintaining a vendor/vendee relationship with Cigar Row, and by paying for the cigars and related products it purchased from Cigar Row. (*See, e.g.*, Catanzaro Decl. ¶ 3, ECF No. 22 at 160; Purchase Order, ECF No. 22 at 132.)

The Compliance Guide contains several provisions that require vendors to comply with applicable laws and regulations:

> 2.17. Vendors represent, warrant and guarantee that all applicable provisions of federal, state and local laws, ordinances, rules, codes and regulations which are applicable to the manufacture and/or sale and/or shipping of merchandise purchased by Wynn Las Vegas (i.e. lead content in crystal ware, fire retardant in children's clothing, pre-washed goose down in pillows, etc.) have been complied with . . . .

(Compliance Guide 8, ECF No. 22 at 110.)

> 20. . . . Vendor represents and warrants that upon execution, and throughout the term of this Purchase Order . . .
>
>> b. Vendor has obtained or filed all licenses, registrations, statements, compliance certificates and permits as may be required by law or other governmental authority, including without limitation the Nevada Gaming Control Act.
>>
>> . . .
>>
>> d. The merchandise covered by this Purchase Order was not designed, manufactured, shipped, installed, sold or priced in violation of any federal, state, or local law.
>>
>> . . .
>>
>> f. Vendor is a duly organized and validly existing business entity under the laws of its state of incorporation and it has obtained all requisite licenses to conduct business in the State of Nevada.
>>
>> g. . . . In the event that any of the aforementioned representations and warranties ceases to be true, complete and accurate at anytime [sic] during the term of this Purchase Order, Vendor shall promptly notify Wynn Las Vegas in writing of such default and shall promptly take such action as is necessary to cure such default. If such default is not cured in a reasonable amount of time, then in Wynn Las Vegas [sic] sole discretion, this Purchase Order may be terminated immediately upon notice to Vendor.

(*Id.* at 22–23, ECF No. 22 at 124–25).

Nevada law prohibits wholesale dealers of "other tobacco products"[1] from engaging in business in Nevada without obtaining a license as a wholesale dealer, *see* NRS 370.445, and it requires wholesale dealers to collect and pay a thirty percent tax on other tobacco

---

1 "'Other tobacco product' means any tobacco of any description or any product made from tobacco, other than cigarettes, alternative nicotine products and vapor products." Nev. Rev. Stat. § 370.0318.

products purchased in the state, *see* NRS 370.450. It is unlawful to sell other tobacco products without paying the tax. NRS 370.460. When wholesale dealers pay the tax, they must also submit to the state a report of the products they sell. NRS 370.465.

Wynn has adduced evidence showing that from 2012 to 2014 Cigar Row sold cigars to Wynn without being licensed in Nevada and without remitting mandatory OTP taxes. David Brown, CEO of Cigar Row, stated that Cigar Row was aware of Nevada's OTP guidelines but chose not to obtain a license with the state and did not pay any OTP tax to the state from 2011 to 2014. (Brown Dep. 114:18–116:25, 184:25–185:3, ECF No. 22 at 58–60, 77–78; *see also* Catanzaro Decl. ¶ 6, ECF No. 22 at 161; Registration, ECF No. 24 at 22 (indicating that Cigar Row was licensed only in South Carolina).) As a result, Wynn paid $136,008.99 in taxes to the State of Nevada for the cigars that Cigar Row wholesaled to Wynn. (Lawrence Decl. ¶ 4, ECF No. 22 at 184; Check, ECF No. 22 at 186.) Thus, Cigar Row breached its contract with Wynn by failing to comply with state law as it agreed to do by accepting the terms of the Compliance Guide. Cigar Row has not reimbursed Wynn for the taxes as required by an indemnification clause in the Compliance Guide. (*See* Compliance Guide ¶ 13, ECF No. 22 at 124.)[2]

The evidence Wynn has presented would entitle it to a directed verdict on this claim if the evidence went uncontroverted at trial. Cigar Row has failed to present a genuine issue of material fact that would require the claim to go to trial. Cigar Row does not dispute the facts identified above; instead, it argues that "the contractual provisions at issue in this case . . . are so vague and indefinite as to render them unenforceable." (Resp. 4–5, ECF No. 24.)

---

2  The indemnification clause requires vendors to "indemnify, defend, and hold harmless Wynn Las Vegas . . . from and against any and all claims, demands, losses, liabilities, damages, causes of action or expenses (including reasonable costs and attorney's fees, which shall be reimbursed as incurred), caused by, resulting from, or in any way connected with . . . the acts or omissions of Vendor or Vendor's agents, employees, or contractors in conjunction with this Purchase Order." (Compliance Guide, ¶ 13, at 124).

It notes the Compliance Guide does not specifically mention a requirement that vendors register as OTP dealers with the state. Cigar Row's argument fails, however, because the Compliance Guide clearly states in definite terms that vendors represent that by registering as vendors with Wynn they are already in compliance with all applicable laws and regulations. The Compliance Guide specifically requires vendors to obtain all licenses required to conduct business in Nevada. (*See* Compliance Guide 8, 22–23, ECF No. 22 at 110, 124–25.) Although the Compliance Guide does not specifically require vendors to pay OTP taxes, any vendor who obtains a license to sell OTP would be aware of the OTP tax associated with the license. Indeed, David Brown admitted that Cigar Row was aware of Nevada's guidelines for OTP but chose not to obtain a license with the state and did not pay any OTP tax to the state from 2011 to 2014. (Brown Dep. 114:18–116:25, 184:25–185:3, ECF No. 22 at 58–60, 77–78.) Nothing about the provisions of the Compliance Guide at issue is vague or indefinite.

Cigar Row also argues that a genuine issue of material fact exists regarding the parties' understanding and interpretation of their obligations because Brown testified that he did not understand the provisions of the Compliance Guide to require Cigar Row to register as an OTP dealer. This argument is based on an assertion the Court has already rejected—that the contractual terms are vague and indefinite. The Compliance Guide clearly requires vendors to be licensed by the state and to comply with all other applicable laws and regulations. Any alleged misunderstanding on Brown's part might have resulted from a misunderstanding of the laws with which Cigar Row agreed to comply, but not a misunderstanding of the Compliance Guide's provisions, which were clear. And even if Brown misunderstood the contractual provisions of the Compliance Guide, Cigar Row would not be excused from honoring them. *See Upton v. Tribilcock*, 91 U.S. 45, 50 (1875)

("It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained."); *Wallace v. Chafee*, 451 F.2d 1374, 1377 (9th Cir. 1971) ("One who enters a contract is on notice of the provisions of the contract. If he assents voluntarily to those provisions after notice, he should be presumed, in the absence of ambiguity, to have understood and agreed to comply with the provisions as written. This is hornbook contract law.").

Wynn has met its burden on summary judgment, and Cigar Row has failed to present a genuine issue of material fact. The Court grants the motion for summary judgment in Wynn's favor as to this claim.[3]

### B. Breach of the Implied Covenant of Good Faith and Fair Dealing

#### 1. Legal Standards

All contracts contain an implied covenant of good faith and fair dealing. *A.C. Shaw Const., Inc. v. Washoe Cty.*, 784 P.2d 9, 9 (Nev. 1989). A contractual breach of the covenant of good faith and fair dealing arises when "terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract . . . ." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922–23 (Nev. 1991).

/ / /

/ / /

---

3  During oral argument on October 6, 2016, the Court noted its inclination to grant summary judgment for Wynn on the breach of contract claim, but expressed reservation with respect to the correct measure of damages. Under NRS 370.450(3), OTP taxes "must be collected and paid by the wholesale dealer . . . ." Therefore, Cigar Row had an obligation to collect OTP taxes from Wynn, meaning that Wynn would have ended up paying the disputed taxes anyway. Notwithstanding the question of damages, however, the Court indicated it would enter its order granting summary judgment for breach of contract in favor of Wynn, the result of which would be to award Wynn damages in the amount of OTP taxes paid, and that it would be up to Cigar Row to attempt to counterclaim for the "collection" of the taxes. On October 11, 2016, Cigar Row filed a motion for leave to amend its Answer to assert this counterclaim. (ECF No. 31.) The Court will consider Cigar Row's motion at the close of briefing.

### 2. Analysis

Wynn cannot prevail on this claim because it argues, and the Court has found, that Cigar Row did not comply with the literal terms of the contract. The determination that Cigar Row breached its contract with Wynn precludes the possibility of a valid claim of breach of the covenant of good faith and fair dealing. The Court denies Wynn's motion for summary judgment as to this claim.

## C. Intentional Misrepresentation

### 1. Legal Standards

A plaintiff must establish three elements to prove a claim of intentional misrepresentation: "(1) a false representation that is made with either knowledge or belief that it is false or without a sufficient foundation, (2) an intent to induce another's reliance, and (3) damages that result from this reliance." *Nelson v. Heer*, 163 P.3d 420, 426 (Nev. 2007). With regard to the first element, "the suppression or omission of a material fact which a party is bound in good faith to disclose is equivalent to a false representation, since it constitutes an indirect representation that such fact does not exist." *Id.* (internal quotation marks omitted). With regard to the third element, "the damages alleged must be proximately caused by reliance on the original misrepresentation or omission." *Id.*

### 2. Analysis

To begin, Cigar Row argues that this claim is barred by a three-year statute of limitations; however, Cigar Row waived this affirmative defense by not affirmatively stating it in its Answer. *See* Fed. R. Civ. P. 8(c)(1). (*See also* Answer 6, ECF No. 4).

Wynn argues that Cigar row intentionally misrepresented that it was complying with Nevada law by being a licensed OTP wholesale dealer and remitting required OTP taxes to the state. As evidence of this misrepresentation, Wynn points to Cigar Row's registration as a vendor

and its agreement to follow the Compliance Guide. However, when Cigar Row registered as a vendor, it specifically disclosed that it did not have a Nevada business license and that it was licensed only in South Carolina. (*See* Registration, ECF No. 24 at 16.) And although Cigar Row certified that it would comply with Nevada law requiring the remittance of OTP taxes, at the time it registered as a vendor it had not sold any products to Wynn and, thus, was not yet required to remit taxes to the state. In other words, by simply registering with Wynn, Cigar Row did not falsely represent that it was paying OTP taxes because at that point it had no duty to pay them. Wynn also presents testimony that Brown told Jessica Catanzaro that Cigar Row was licensed in Nevada as an OTP wholesale dealer and had been paying all its taxes.[4] (Catanzaro Decl. ¶¶ 7–8, ECF No. 22 at 161.)  However, Brown made these statements on May 27, 2014, a week after Wynn was contacted by the Nevada Department of Taxation, told that Cigar Row had not been paying OTP tax, and canceled all pending purchase orders with Cigar Row. (*Id.* at ¶¶ 6–8.) Because Brown's misrepresentations came after Wynn had already cut business ties with Cigar Row, Wynn cannot establish that any damages proximately flowed from its reliance thereon.

Wynn also argues that Cigar Row intentionally concealed the fact that it was not in compliance with Nevada law. Again, Cigar Row did disclose to Wynn that it was only licensed to do business in South Carolina. With the knowledge that Cigar Row was not licensed in Nevada, Wynn might have inferred that Cigar Row also would not be paying OTP taxes, but Cigar Row did not affirmatively represent that it would not be paying taxes. Wynn presents evidence to show that it first became aware that Cigar Row was not paying OTP taxes on May 20, 2014, when an auditor from the Nevada Department of Taxation contacted Wynn. (*Id.* at ¶

---

4 The Court can consider Catanzaro's testimony regarding Brown's statements because the statements are not hearsay under Federal Rule of Evidence 801(d)(2). Brown was speaking as the CEO of Cigar Row when he made the statements and they therefore qualify as statements of an opposing party.

6.). Also, Brown testified that Cigar Row did not reveal whether it was paying OTP taxes on its invoices to Wynn because it does not itemize the OTP tax on its invoices. (Brown Dep. 182:16–183:22, ECF No. 22 at 75–76.)

Although this evidence shows that Cigar Row failed to disclose to Wynn that it was not paying the OTP tax, it does not show that Cigar Row intentionally concealed or withheld that fact. It also does not show that Cigar Row concealed its lack of OTP payment to induce Wynn's reliance. Wynn argues simply that "[c]ertainly, Cigar Row intended to induce Wynn to rely upon the material misrepresentations and omission," (Mot. Summ. J. 12, ECF No. 22), without adducing any evidence to support its argument. Also, Brown states that Cigar Row believed it was not required to pay the OTP tax and that the responsibility to pay the tax would pass on to the customer. (Brown Dep. 182:25–184:16, ECF No. 22 at 75–77.) This evidence could negate evidence that Cigar Row intentionally induced Wynn's reliance.

Wynn has not established that it would be entitled to a directed verdict at trial. The Court denies the motion as to this claim.

   **D.**  **Negligent Misrepresentation**

      **1.**  **Legal Standards**

A plaintiff must establish the following elements to prove a claim of negligent misrepresentation:

> (a) a representation that is false;
> (b) this representation was made in the course of the defendant's business, or in any action in which he has pecuniary interest;
> (c) the representation was for the guidance of others in their business transactions;
> (d) the representation was justifiably relied upon;
> (e) this reliance resulted in pecuniary loss to the relying party; and
> (f) the defendant failed to exercise reasonable ca[r]e or competence in obtaining or communicating the information.

/ / /

*Ideal Elec. Co. v. Flowserve Corp.*, 357 F. Supp. 2d 1248, 1255 (D. Nev. 2005) (citing *Bill Stremmel Motors, Inc., v. First Nat'l Bank of Nevada*, 575 P.2d 938 (Nev. 1978)). Nondisclosure of material facts that one party has a duty to disclose to the other party is the functional equivalent of a misrepresentation. *In re Agribiotech, Inc.*, 291 F. Supp. 2d 1186, 1191–92 (D. Nev. 2003).

### 2.   Analysis

To begin, Cigar Row argues that this claim is barred by a two-year statute of limitations; however, Cigar Row waived this affirmative defense by not affirmatively stating it in its Answer. *See* Fed. R. Civ. P. 8(c)(1). (*See also* Answer 6, ECF No. 4).

Wynn has presented sufficient evidence to show that Cigar Row made a false representation. The Compliance Guide required Cigar Row to promptly notify Wynn in writing if at any time it was not in compliance with the applicable laws and regulations. (*See* Compliance Guide ¶ 20(g), ECF No. 22 at 125). State law required Cigar Row to pay OTP taxes on the products it was wholesaling to Wynn, which it failed to do. Although Cigar Row initially informed Wynn that it was not licensed to do business in Nevada, it failed throughout their business relationship to inform Wynn that it was not paying OTP taxes, which Cigar Row had a duty to do. This nondisclosure is the functional equivalent of a misrepresentation.

Cigar Row argues that Wynn did not justifiably rely on the misrepresentation, however, because Cigar Row notified Wynn that it was not licensed in Nevada. The Court agrees. Wynn knew that Cigar Row did not hold a Nevada license; therefore, it could not have justifiably relied on Cigar Row's nondisclosure of its lack of compliance with the OTP tax law. Although Cigar Row failed in its duty to inform Wynn that it was not paying the tax, Wynn had reason to believe Cigar Row was not paying the tax, and no evidence shows that Wynn investigated whether Cigar Row was paying the tax. Thus, even if Wynn relied on Cigar Row's misrepresentation, its

reliance was not justified because it knew Cigar Row was not licensed and, therefore, was likely not paying OTP taxes.

Wynn has not established that it would be entitled to a directed verdict at trial. The Court denies the motion as to this claim.

### E. Unjust Enrichment

Wynn asserts its unjust enrichment claim only inasmuch as the Court does not grant the motion as to its claim of breach of contract. Because the Court is granting the motion as to Wynn's claim of breach of contract, it does not need to address the unjust enrichment claim at this time.

### F. Punitive Damages

Wynn asks the Court to award punitive damages. Under Nevada law, the Court may award punitive damages "in an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice, express or implied." NRS 42.005(1). Wynn's claims of breach of contract and breach of the implied covenant of good faith and fair dealing arise from contract; thus, punitive damages are not available for those claims. Arguably, the other claims arise from obligations separate from the contract at issue here, but Wynn has not proven those claims or shown by clear and convincing evidence that Cigar Row is guilty of oppression, fraud, or malice. The Court denies the request.

/ / /

/ / /

/ / /

/ / /

/ / /

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 22) is GRANTED in part and DENIED in part.

IT IS SO ORDERED December 6, 2016.

							_____
							ROBERT C. JONES
							United States District Judge