**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| WYNN LAS VEGAS, LLC, | |
| Plaintiff, | 2:15-cv-01079-RJC-CWH |
| vs. | **ORDER** |
| CIGAR ROW, LLC, | |
| Defendant. | |

This case arises from an alleged breach of contract between a wholesale vendor of tobacco products and its vendee. Now pending before the Court is Wynn's Motion to Dismiss Cigar Row's amended counterclaim. (ECF No. 43.) For the reasons given herein, the Court grants the motion.

**I. FACTS AND PROCEDURAL HISTORY**

The facts underlying this case have been detailed in the Court's prior orders, and need not be revisited at length here. (*See* ECF Nos. 37, 41.)

In brief, Wynn filed this action alleging Cigar Row breached its contract with Wynn by failing to obtain a license to operate in Nevada and failing to collect and remit $136,008.99 in "other tobacco products" ("OTP") taxes. As a result of Cigar Row's breach, Wynn was ultimately forced to pay the OTP taxes to the State. (*See* July 10, 2014 Email from Michael P. Kelly, ECF No. 22 at 175–76; Lawrence Decl. ¶ 4, ECF No. 22 at 184; Check, ECF No. 22 at

186.) On November 28, 2016, the Court granted summary judgment in Wynn's favor on the breach of contract claim, the effect of which was to award Wynn damages in the amount of OTP tax assessment. (Order, ECF No. 37.) On January 4, 2017, the Court permitted Cigar Row to file an amended counterclaim, on the basis that under N.R.S. 370.450(3), OTP taxes "must be collected and paid by the wholesale dealer . . . ." Therefore, Cigar Row had an obligation to collect OTP taxes *from Wynn*, and under the standard contractual relationship Wynn would have had to pay the disputed taxes anyway. Accordingly, the Court observed that "the ultimate just result may be that Cigar Row owes Wynn nothing, or at least less than the full amount claimed by Wynn." (Order 4–5, ECF No. 41.)

Cigar Row's amended counterclaim was thus filed, alleging one cause of action for collection of OTP tax pursuant to N.R.S. 370.450. (ECF No. 42.) Wynn now moves to dismiss the counterclaim under Rule 12(b)(6). (Mot. Dismiss, ECF No. 43.)

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most

favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts pertaining to his own case making a violation "plausible," not just "possible." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). That is, under the modern interpretation of Rule 8(a), a plaintiff must not only specify or imply a cognizable cause of action (*Conley* review), but also must allege the facts of his case so that the court can determine whether the plaintiff has any basis for relief under the cause of action he has specified or implied, assuming the facts are as he alleges (*Twombly-Iqbal* review).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside

of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

**III.  ANALYSIS**

Having now allowed Cigar Row to amend its pleading, and given proper consideration to the counterclaim, the Court will grant Wynn's motion to dismiss. Cigar Row has failed to state a cognizable claim to collect the disputed taxes.

The statutory scheme governing the Nevada OTP tax is found at N.R.S. 370.440–370.503. These statutes impose a thirty percent tax upon the purchase or possession of other tobacco products by a customer in Nevada, to be levied on the wholesale price of such products. N.R.S. 370.450. Under the definitions provided in the statutes, Wynn is a "retail dealer," and Cigar Row is a "wholesale dealer." N.R.S. 370.440(3), (6). Both retail and wholesale dealers must be licensed through the Department of Taxation before engaging in business as dealers in Nevada. N.R.S. 370.441(2). However, the actual duty to remit OTP tax is imposed solely on wholesale dealers. N.R.S. 370.450(3). Under Section 370.450, wholesale dealers are subject to two independent statutory obligations: first, *to collect* the necessary OTP tax, and second, *to pay* the tax to the State. *Id.* Furthermore, when the statutory scheme is considered as a whole, it becomes clear that the Nevada Legislature intended that wholesale dealers—as opposed to retail dealers—would pay the OTP tax. For example, criminal penalties for failure to pay OTP tax are applicable only to wholesale dealers. N.R.S. 370.450(4). And it is only wholesale dealers who may claim tax credits "for other tobacco products on which the tax has been paid . . . and that may no longer be sold." N.R.S. 370.490(1), (3).

Here, there was a failure to collect and pay on the part of Cigar Row—this is why the parties are in litigation. Cigar Row clearly did not comply with the aforementioned statutes. However, this is not to say that Cigar Row's failure to collect and pay the taxes wholly absolves

Wynn of all responsibility for the payment of OTP tax on the products it purchased from Cigar Row. The OTP tax statutes make it "unlawful for any person to sell or offer to sell other tobacco products on which the tax is not paid." N.R.S. 370.460. Therefore, even though it is the wholesale dealer's obligation to collect and remit the taxes, retail dealers also have an obligation to ensure that the necessary taxes have been paid on any other tobacco products they sell.

Moreover, it is important to note that the OTP tax is imposed "on the *purchase or possession* of other tobacco products by a customer" in Nevada. N.R.S. 370.450(1). In this respect, the OTP tax is very similar to a general sales and use tax, imposed at wholesale rather than retail. Under Nevada law, the burden of paying a sales tax falls on the buyer. *See, e.g.*, N.R.S. 372.110 ("The tax hereby imposed shall be collected by the retailer from the consumer insofar as it can be done."); *see also United States v. Nevada Tax Comm'n*, 291 F. Supp. 530, 533 (D. Nev. 1968), *aff'd*, 439 F.2d 435 (9th Cir. 1971) (holding that the "incidence of the Nevada Sales Tax" falls on the buyer, not the seller); 1995 Nev. Op. Att'y Gen. 76 (1995) (the purchaser "bears the legal obligation to remit the sales tax"). The OTP tax as well is meant to be "collected" by the wholesale dealer, i.e., collected *from the buyer*. After all, it is the customer's *purchase* of the products that is taxed, so it would seem that the ultimate tax burden must fall on the *purchaser*.

The Nevada Supreme Court case of *Campbell v. Nevada Tax Comm'n*, 853 P.2d 717 (Nev. 1993), is instructive. In *Campbell*, plaintiffs were residents of both Oregon and Nevada. Plaintiffs purchased a car from a licensed dealer in Reno, and "executed an affidavit declaring that the car would be removed from Nevada within fifteen days and would not thereafter be used or stored in Nevada." On the basis of the affidavit, the dealer did not assess Nevada sales tax on the car at the time of the purchase. *Id.* at 718. Several months later, plaintiffs were driving their car in Nevada when "a Nevada Highway Patrol officer spotted the car with Oregon plates,

identified its owners as Nevada residents, and began proceedings against" plaintiffs. *Id.* "The Nevada Department of Taxation later assessed a tax deficiency against [plaintiffs] of $13,505.71." *Id.*

In the civil action challenging that tax assessment, the Nevada Supreme Court observed: "Unless exemptions from [the] general provisions apply, sales tax is owed *upon the purchase* of tangible personal property in Nevada," and it is the *taxpayer* who "bears the burden of proving that he is entitled to [an] exemption." *Id.* at 719–20 (emphasis added). Accordingly, because plaintiffs were unable to show that an exemption from sales tax applied to the purchase of their car, the tax assessment against them was affirmed. *Id.* at 720–21. The Nevada Supreme Court's analysis in *Campbell* confirms that the ultimate burden to pay Nevada sales tax is imposed on the buyer of the products sold and not the seller.

However, the facts of this case are distinguishable. This is not an action to assess unpaid taxes brought by the State tax authority; that ship sailed when the State assessed the outstanding OTP taxes against Wynn. Rather, broadly speaking, this action was brought to enforce the terms of an agreement between private parties. In the context of a typical wholesale transaction of other tobacco products, as in the general retail context, the costs of applicable sales tax will be provided for at the time of the transaction under a private agreement between the parties. For instance, at the checkout counter an item of clothing will ring up at the sticker price *plus tax*—a total purchase price which the buyer can reject, thereby denying the offer, or accept, thereby completing the sale contract. Here, Wynn and Cigar Row bargained at arm's length regarding contract terms, including pricing. Cigar Row then sold other tobacco products to Wynn at the contract prices, and Wynn paid Cigar Row's invoices in full. At no point during the parties' contract did Cigar Row attempt to collect OTP taxes from Wynn. Accordingly, the Court has ruled that Cigar Row's failure to obtain a Nevada license and to collect and pay OTP taxes

constituted a breach of its contract with Wynn. (*See* Order 5–9, ECF No. 37.) Wynn suffered damages when it was required to pay those taxes to the Department of Taxation.

Now, Cigar Row has not identified any theory that would allow it to offset the damages it must pay to Wynn. The Court agrees with Wynn that there is no private right of action for violations of N.R.S. 370.440–370.503. *See, e.g.*, *Richardson Constr., Inc. v. Clark Cnty. School Dist.*, 156 P.3d 21, 23 (Nev. 2007) ("[W]hen a statute does not expressly provide for a private cause of action, the absence of such a provision suggests that the Legislature did not intend for the statute to be enforced through a private cause of action."). If a dealer of other tobacco products fails to comply with any provisions of the statutes, it is the Attorney General or the district attorney who may "investigate and prosecute any civil or criminal violation." N.R.S. 370.530(1). The purpose of the statutory scheme is to ensure the correct taxes are paid to the State; here, the State has already settled its tax claim with Wynn. In contrast, if private parties have a dispute over who bears the burden of an OTP tax assessment, the appropriate vehicle for resolving that dispute would sound in contract, or perhaps in equity. Cigar Row has specifically opted not to allege that Wynn breached any agreement between them, and has instead only asserted a claim under the very statutory provision which imposed the obligation *on Cigar Row* to collect and remit OTP taxes; the very provision Cigar Row failed to comply with. (Resp. 10, ECF No. 49.)

Therefore, Cigar Row has failed to identify any cognizable basis for its counterclaim against Wynn.

/ / /

/ / /

/ / /

/ / /

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 43) is GRANTED, without leave to amend.

The Clerk of the Court shall enter judgment in favor of Wynn and close the case.

IT IS SO ORDERED.

DATED: This 13th day of April, 2017.

_____
ROBERT C. JONES
United States District Judge